UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARCUS BEAM | No. 19 CR 698<br><br>Judge Martha M. Pacold |

**GOVERNMENT'S SENTENCING MEMORANDUM AND POSITION PAPER
REGARDING SENTENCING FACTORS**

The UNITED STATES OF AMERICA, by its attorney, MORRIS PASQUEL, Acting United States Attorney for the Northern District of Illinois, submits the following sentencing memorandum and position paper as to sentencing factors regarding defendant Marcus Beam.

### I. Introduction

As an initial matter, the government agrees with the Presentence Investigation Report's (PSR) factual evaluations regarding the charges in this case, PSR ¶¶1-5, the description of the offense conduct and stipulated offense, PSR ¶¶6-17, the impact on the victims, PSR ¶¶18-21, the adjusted offense conduct, PSR ¶¶28-38, the acceptance of responsibility, PSR ¶¶22-27, the stipulated offense conduct, PSR ¶¶39-44, the total offense level, PSR ¶¶45-49, the defendant's criminal history, PSR ¶¶52-64, the offender's characteristics, PSR ¶¶65-95, the sentencing options, PSR ¶¶96-102, and the mandatory, discretionary, and special conditions of supervised release, PSR pp. 19-24.

### II. The Offense of Conviction

As summarized in the Government's Version of the Offense and the PSR,

defendant Marcus Beam was arrested on September 4, 2019 and charged with engaging in a mail fraud scheme. He was released on bond at his initial appearance and indicted on January 16, 2020 for wire fraud in violation of Title 18, United States Code, Section 1343 (Counts 1-7, 9-10), and mail fraud in violation of Title 18, United States Code, Section 1341 (Count 8). His arraignment was scheduled for January 30, 2020 but he failed to appear and it was re-scheduled for February 5, 2020. However, Beam fraudulently obtained a passport and used it to flee to Bali, Indonesia. A bench warrant was issued for his arrest.

Beam was detained by the Indonesian authorities in July 2020 on charges unrelated to this case. He was eventually expelled from Indonesia to South Korea in January 2021, where he was taken into custody by the U.S. Marshals Service and returned to Chicago. He was arraigned on January 27, 2021, and has been in custody since then. On March 16, 2023, Beam entered a guilty plea to Count One of the indictment pursuant to a written plea agreement.

Count One charged that beginning in or about no later than March 2015, and continuing until in or about at least October 2019, in the Northern District of Illinois, Eastern Division, and elsewhere, Beam devised, intended to devise, and participated in a scheme to defraud investors and others, and to obtain money and property from those investors and others, by means of materially false and fraudulent pretenses, representations, and promises, in violation of 18 U. S. C. § 1343. The scheme operated as follows:

2

Beam held himself out to potential investors as the Chief Executive Officer, President, Manager, and owner of an investment company known as Chase Private Equity LLC, which was also known as New World Capital (collectively referred to as CPE). Beam falsely represented that he was an investment adviser and that CPE was a private equity fund that pooled investors' money in order to make investments. Beam also owned and operated other companies, including VR 360 LLC, which he described as a virtual reality entertainment company, and Imex Energy (also known as Imex Energy d/b/a Grey Market Investments or GMI) (Imex), which he described as a brokerage firm that sold retail electricity for third parties.

Beam obtained funds from individuals and entities in connection with these companies by falsely representing that their funds would be invested stock in popular companies such as Uber and Lyft, stock that was being sold through initial public offerings (IPOs) and pre-IPOs, and other investments such as gold, art, and real estate. Beam knowingly made materially false representations to the investors to fraudulently obtain and retain their money, including about the type of investments that would be made, the safety of those investments, and the expected and actual returns on investments. Beam gave certain investors fraudulent account statements that showed fictitious investments and falsely inflated the value of the accounts, knowing that the account statements contained false information.

Beam falsely represented to investors that their funds would be maintained in separate individualized accounts and that they would earn, and did earn, huge profits

3

when he knew that was false. The investors included women he met through on-line dating sites, as well as a family member and an employee. Among other things, Beam falsely represented that CPE had assets under management of more than $95 million, which he knew was not true. Beam also falsely promised that investors could withdraw all their funds at any time by simply providing notice, and that they would be repaid within a specified period of time. Instead, Beam co-mingled and deposited the investors' funds into the CPE and Imex accounts he maintained. In fact, Beam knew that the investors would not be repaid because Beam intended to and did misappropriate their money for his own benefit.

In addition, Beam convinced certain individuals to invest funds from their retirement accounts by falsely representing that huge profits would be generated by the investments which would cover the taxes and penalties the investors would have to pay for early withdrawal of funds from the accounts. Beam falsely represented that the investments would be safe and would involve low risks, even though he knew that no profits were generated and he misappropriated most of the retirement funds.

Moreover, Beam hired a group of telemarketers to make cold calls to solicit investments. Beam caused the telemarketers to falsely represent that the investors would make substantial profits by investing with CPE when he knew CPE was not making substantial profits. And Beam obtained $50,000 from a property management company he falsely told that he would use those funds to renovate a

4

commercial storefront that he was leasing from them. Contrary to those representations, Beam used those funds for his own benefit.

Despite knowing that he was not authorized to use investors' funds for his own benefit, Beam used money that belonged to investors to pay for personal and business expenses, including making cash withdrawals, rent payments, retail purchases at stores such as Walmart and Ikea, and payments for credit cards, auto loans, and payroll expenses. In order to delay discovery and continue his scheme, Beam made false lulling statements to investors concerning repayment of their funds and why they were not being paid back as requested.

As a result of the scheme, Beam caused losses to investors of at least approximately $566,228, as set forth in the chart that appears on page 5 of the Government's Version of the Offense (which is not reproduced here in order to protect the privacy of Beam's victims).

For the purpose of executing the scheme to defraud, on or about June 2, 2017, in the Northern District of Illinois, Eastern Division, and elsewhere, Beam knowingly caused to be transmitted in interstate commerce by means of wire communication, certain writings, signs, and signals, namely, an interstate transfer of funds sent electronically by Investor A from her bank account through the Fedwire system, to Chase Private Equity's bank account at Bank of America, in the amount of approximately $40,000, to be invested by Beam, in violation of Title 18, United States Code, Section 1343.

5

### III. The Stipulated Offense

In addition, for purposes of computing his sentence under Guideline § 1Bl.2, Beam stipulated in his plea agreement to having committed the following offense, namely, Failure to Appear, in violation of 18 U.S.C. 3146 and 3147, and admitted to the following relevant conduct pursuant to Guideline § 1B1.3:

On September 12, 2019, Beam was arrested based on a complaint. He was released on bond and an order setting conditions of release was entered. The order stated that the "defendant must not violate any federal, state or local law while on release…[and] must appear in court as required." The order also prohibited Beam from traveling outside of the United States and from obtaining a passport. Specifically, the order stated that: "If, after release, you knowingly fail to appear as the conditions of release require … you may be prosecuted for failing to appear … and additional punishment may be imposed…. A term of imprisonment imposed for failure to appear … will be consecutive to any other sentence you receive." Beam signed the bond order acknowledging that he was aware of the conditions of release and promising to appear as directed.

As set forth above, on January 16, 2020 an indictment was returned charging Beam with nine counts of wire fraud and one count of mail fraud, in violation of 18 U.S.C. 1343 and 1341, and Beam's arraignment was set for January 30, 2020. Beam intentionally did not appear for the arraignment, in violation of the conditions of the release order. The arraignment was re-scheduled for February 5, 2020. Beam again

6

intentionally did not appear. Beam knew about the scheduled dates, and he knew that he was required to appear for the arraignment but knowingly and intentionally failed to appear. A bench warrant was issued for his arrest following his second failure to appear.

On about January 16, 2020, Beam left the United States and travelled to Bali, Indonesia. In order to travel to Bali, Beam fraudulently obtained and used a passport that belonged to another person, Individual 1. Beam used that passport to obtain a ticket to Bali and enter Indonesia. Beam obtained Individual 1's passport in the following manner:

In about October 2019, Beam advertised on Craigslist for male actors aged 30-55 to participate in a television show purportedly being filmed in Jamaica. The advertisement stated that the actors were required to have a passport or the ability to get one immediately. Although no such television show existed, Beam held fake auditions. After Individual 1 auditioned, Beam told him that he had gotten the job and that he would make travel arrangements for Individual 1 to fly to Jamaica. Beam told Individual 1 that he needed his passport to make the travel arrangements and Individual 1 therefore provided his passport to Beam. Beam fraudulently kept that passport and used it for his own benefit, without Individual 1's knowledge or permission. Falsely representing that he was Individual 1, Beam used the passport to travel to and obtain lodging in Bali. Beam voluntarily remained in Bali until in or about July 2020, when he was arrested and detained by Indonesian law enforcement

agents. On January 27, 2021, Beam was returned to Chicago in the custody of the United States Marshal's Service.

As relevant conduct, Beam admitted in his plea agreement that beginning on or about January 30, 2020 and continuing until on or about February 5, 2020, in the Northern District of Illinois and elsewhere, having been released on bond pursuant to Chapter 207 of Title 18, United States Code, he knowingly failed to appear before a court as required by the conditions of release in case 19 CR 698, in violation of Title 18, United States Code, Sections 3146(a)(1), and 3146(b)(1)(A)(i). Beam committed this offense while on release pursuant to Chapter 207 of Title 18, United States Code, in violation of Title 18, United States Code, Section 3147.

### IV. Statutory Penalties

The charge to which Beam pled guilty carries a maximum statutory penalty of 20 years' imprisonment, a maximum fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greater, and a term of supervised release of not more than three years. In addition, the Court must order restitution to the victims of the offense in an amount determined by the Court. And pursuant to Title 18, United States Code, Section 3013, Beam must be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty imposed.

### V. Sentencing Guidelines Calculations

For purposes of calculating the advisory Sentencing Guidelines in this case:

    a.    **Applicable Guidelines**. The Sentencing Guidelines to be

considered in this case are the November 2021 Guidelines Manual.

**Offense Level Calculations**.

  i.  The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

  ii.  As set forth in the plea agreement and noted by the PSR, it is the government's position that the base offense level should be increased by 14 levels because the actual loss resulting from the scheme charged in Count One is between $550,000 and $1,500,000 (that is, approximately $566,228), pursuant to Guideline § 2B1.1(b)(1)(H). Beam maintains that the base offense level should be increased by 12 levels because the actual loss resulting from the scheme is between $250,000 and $550,000, pursuant to Guideline § 2B1.1(b)(1)(G). The parties agreed that he retains the right to dispute the government's loss calculation at sentencing. The government agrees with the PSR that the increase is 14 levels for the reasons stated in the PSR.

  iii.  As set forth in the plea agreement and noted by the PSR, it is the government's position that the offense level should be increased by 2 levels because the offense involved 10 or more victims, pursuant to Guideline § 2B1.1(b)(2)(A)(i). Defendant Beam disagreed that the offense involved 10 or more victims and retains the right to dispute the increase of 2 levels at sentencing. The government agrees with the PSR that the increase is 2 levels because the offense involved 10 or more victims, as stated in the PSR.

The disagreement between the parties regarding the two prior guidelines is based on Beam's contention that although he pled guilty to the single scheme charged in Count One, one aspect of the scheme and the $50,000 loss resulting from it should nonetheless be ignored in calculating his sentencing guidelines. Specifically, Beam contends that paragraph 13 of Count One, which charges that—

> It was further part of the scheme that defendant BEAM obtained funds from a property management company by falsely representing that he would use those funds to renovate a commercial storefront that he was leasing from them. Contrary to those representations, defendant BEAM used a substantial portion of those funds for his own benefit, and did not pay for or complete the promised renovations.

—should be ignored. In fact, however, Count One charged that Beam fraudulently obtained funds from investors "and others" by means of false representations, including in paragraph 13 a real estate development company Beam defrauded of $50,000 based on a phony promise that he would develop a virtually reality bar in that company's facility, as reflected in the loss chart referred to above and presented in the Government's Version at p. 5. It is the government's position that there is no legal or factual basis to ignore this aspect of the scheme to which Beam pled, or the loss resulting from it. The PSR agreed with the government's position as to both the loss amount and number of victims.

      vi.    Pursuant to Guideline § 3B1.3, the base offense level is increased by 2 levels because defendant abused a position of trust in a manner that significantly facilitated the commission and concealment of the offense.

    v.  Pursuant to Guideline § 3C1.3, the base offense level is increased by 3 levels because defendant failed to appear while on bond for the instant offense, in violation of 18 U.S.C. §§ 3146 and 3147.

    vi.  The government agrees with the conclusion in the PSR that the defendant clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if he continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

    vii.  The government further agrees that in accord with Guideline § 3E1.1(b), defendant timely notified the government of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a 2 level reduction for acceptance of responsibility, the government will move for an additional 1 level reduction in the offense level.

  b.  **Criminal History Category**. With regard to determining

defendant's criminal history points and criminal history category, based on the facts now known to the government, the government agrees with the PSR that defendant's criminal history points equal zero and defendant's criminal history category is I.

**VI. Anticipated Advisory Sentencing Guidelines Range**. The government agrees with the PSR that the anticipated total offense level is 24, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 51 to 63 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

**VII. Restitution and Forfeiture**

Regarding restitution, pursuant to 18 U.S.C. § 3663A the Court must order full restitution in the amount outstanding at the time of sentencing, minus any credit for funds repaid prior to sentencing. It is the government's position that the total amount of restitution owed to victims is approximately $566,228.

**VIII. Victim Impact**

Two victims have submitted letters attesting to the devastating impact Beam's fraud had upon their lives.

**IX. Application of the Sentencing Factors**

As a matter of procedure, the district court must correctly calculate the sentencing guideline range, treat the guidelines as advisory, consider the applicable sentencing factors under 18 U.S.C. § 3553(a), select a sentence supported by the facts presented, and then adequately explain the selected sentence, including any variance

12

from the guideline range. *Gall v. United States*, 552 U.S. 38, 49-50 (2007); *United States v. Annoreno*, 713 F.3d 352, 357 (7th Cir. 2013). "[A] major [variance] should be supported by a more significant justification than a minor one." *Gall*, 552 U.S. at 50; *see also United States v. Smith*, 811 F.3d 907, 910 (7th Cir. 2016) ("the farther down the judge goes the more important it is that he give cogent reasons for rejecting the thinking of the Sentencing Commission"). The § 3553(a) factors which must be considered are: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

    **A.    Nature and Circumstances of the Offense**

The nature and circumstances of the offense set forth above demonstrate that Beam's crimes were serious and should be punished accordingly. He engaged in a deliberate and lengthy scheme to defraud his victims and spent all their money on

13

himself. As the victims who wrote this Court stated, he ruined their lives and should be held accountable and punished for that deliberate conduct.

### B.  History and Characteristics of the Defendant

Engaging in such prolonged fraudulent criminal conduct was Beam's choice alone and the PSR's account of his background makes clear that there was no excuse for it. Beam simply and deliberately set out to defraud his victims and wreck their financial and personal lives.

### C.  The Seriousness of The Offense, Respect For The Law, Provide Just Punishment, Deterrence, and Protect The Public From Further Crimes

There is a substantial need for specific deterrence in this case. On that basis, the PSR notes that Beam's scheme spanned nearly five years and caused significant financial and emotional harm to his victims, including his own brother and former employee. The victim impact statements submitted by several of the victims reflect the devastating financial and emotional harm the defendant caused them. For example, one of the victims is struggling to make ends meet and suffering with severe depression and the defendant's brother wrote that the defendant "destroyed my entire life savings, our families, and many others in the Illinois and Georgia area." In further aggravation, the defendant fled to Bali using another person's passport (which he obtained through false pretenses) while on bond in the instant offense. The PSR therefore recommended that Beam be sentenced to 46 months' incarceration, significantly below the low end of the Sentencing Guidelines range, to be followed by

14

3 years' supervised release. In light of Beam's conduct, the government disagrees with the Probation Officer's recommendation and instead recommends that Beam be sentenced to at least 51 months' incarceration, the low end of the Guidelines range.

## X.  Supervised Release Conditions

Consistent with the goals of sections 3583(c) and 3553(a), the government agrees with the Probation Officer's recommendation of a 3 year term of supervised release, as well as the recommendations for the mandatory, discretionary, and special conditions of supervised release. These conditions are consistent with the statutory goals of affording adequate deterrence to, and protecting the public from, additional criminal conduct by Beam. In addition, these conditions will provide the defendant with needed treatment and allow him to develop skills necessary for life after incarceration.

## XI. Conclusion

For the foregoing reasons, the government respectfully requests this Court to sentence defendant Beam to at least 51 months' imprisonment and impose the recommended supervised release conditions, in order to reflect the seriousness of the offenses, promote respect for the law, provide a just punishment, provide adequate deterrence, and protect the public from future crimes by the defendant, while also taking into consideration defendant's personal history.

Respectfully submitted,

MORRIS PASQUEL
Acting United States Attorney

By: */s/William R. Hogan, Jr.*
WILLIAM R. HOGAN, JR.
Assistant United States Attorneys
219 South Dearborn Street
Chicago, Illinois 60604