UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 19 CR 698 |
| | ) | |
| MARCUS BEAM, | ) | The Honorable |
| | ) | Martha M. Pacold, |
| Defendant. | ) | Presiding Judge |

### DEFENDANT MARCUS BEAM'S SENTENCING MEMORANDUM

Now comes the defendant, MARCUS BEAM, by and through his attorneys, JEFFREY B. STEINBACK and VADIM A. GLOZMAN, and respectfully requests that this Honorable Court, in light of *Gall v. United States*, 552 U.S. 38 (2007) and the factors set forth in 18 U.S.C. § 3553(a), to sentence him to the most lenient sentence permissible under the law; one that is sufficient, but not greater than necessary to comply with the purposes of sentencing. In support, the following is offered:

### Introduction

By the time Mr. Beam comes before this Honorable Court for sentencing, he will have been in custody as a pre-trial detainee for over three years. He has spent much of this time reflecting on the decisions he has made leading to his misconduct in this case, his wrongful flight, the difficult time he experienced while held in custody in Indonesia, his upcoming sentencing, and his uncertain future. The PSR speaks to his contrition and his acceptance of embracing personal responsibility and his commitment to becoming a productive and law-abiding member of his community and society.

1

Mr. Beam has entered a plea of guilty for his wrongdoings and accepts the gravity of his criminal behavior. He was clearly wrong, offering no excuses. Rather, he offers himself to the mercy of this Court, to take into consideration his lack of criminal history when fashioning its reasonable sentence. And he remains anxious and fearful of an uncertain future.

Considering both the nature and circumstances of the instant offense, his personal history and characteristics, the absence of any prior criminal history, and considerations of recidivism and specific deterrence, Mr. Beam respectfully asks this Honorable Court to sentence him to the most lenient sentence permissible under the law; one that is sufficient, but not greater than necessary, to comply with the purposes of sentencing.

## Sentencing Considerations Pursuant to 18 U.S.C. § 3553(a) Supporting a Below-Guidelines Sentence

This Court maintains unfettered discretion to fashion a sentence that punishes the offender, as opposed to just the crime. *Pepper v. United States*, 131 S.Ct. 1229, 1240 (2011); *United States v. Ramirez-Mendoza*, 683 F.3d 771, 777 (7th Cir. 2012). After first calculating the applicable sentencing range, district courts are then tasked with imposing a sentence that is reasonable under 18 U.S.C. § 3553(a). However, because sentencing guidelines ranges are not to be presumed reasonable, this Court must consider whether they actually conform to the particular circumstances of the case. *Nelson v. United States*, 555 U.S. 350 (2009) (*per curiam*); *United States v. Dean*, 414 F.3d 725, 730-31 (7th Cir. 2005). So long as the selected sentence is "rooted in § 3553(a), sufficiently individualized to the circumstances of [the] case, and generally associated with sentencing leniency[,]" a below guidelines sentence is appropriate. *United States v. Wachowiak*, 496 F.3d 744, 745 (7th Cir. 2007).

In fashioning a sentence that is sufficient but not greater than necessary, Mr. Beam

2

respectfully asks this Court to consider the nature and circumstances of the offense, his personal history and characteristics, his acceptance of responsibility, and his lack of any criminal history.

      a.     **Advisory Guideline Range**

As the Seventh Circuit has formally established, a sentencing court's inquiry begins by calculating the defendant's advisory Guideline range. *United States v. Schroeder*, 536 F.3d 746, 755 (7th Cir. 2008). Mr. Beam's advisory Guideline sentence should be calculated as follows:

| | |
|---|---|
| Base Offense Level §2B1.1(a)(1) | 7 |
| Amount of Loss §2B1.1(a)(1)(G) (less than $550,000) | + 12 |
| Abuse of Position of Trust §3B1.3 | + 2 |
| Failure to Appear §3C1.3 | + 3 |
| Acceptance of Responsibility §3E1.1(a) | - 2 |
| Timeliness of Plea §3E1.1(b) | <u>- 1</u> |
| Total Offense Level | 21 |

The Plea Agreement states that the government proposes that the loss amount is $566,228, resulting in a 14-level increase pursuant to §2B1.1(a)(1)(H) (greater than $550,000), rather than the 12-level increase proposed by Mr. Beam. (Plea Agreement, page 10) The government also proposes a 2-level enhancement, pursuant to §2B1.1(b)(2)(A)(i), on the belief that the offense involved 10 or more victims. (Plea Agreement, pages 10-11) The basis for the government's position relates to a $50,000 transaction the defendant received from CR River Square LLC, a real estate development company.

Count One of the Indictment alleges: "It was further part of the scheme that defendant BEAM obtained funds from a property management company by falsely representing that he

would use these funds to renovate a commercial storefront that he was leasing from them. Contrary to those representations, defendant BEAM used a substantial portion of those funds for his own benefit, and did not pay for or complete the promised renovations." (Dkt. No. 20, Indictment, Count One, paragraph 13, pages 4-5; Page ID##: 64-65)

However, while this allegation is set forth in Count One of the Indictment, and Mr. Beam has pleaded guilty to Count One of the Indictment, the conduct related to CR River Square was excluded from and is **not** included in and made a part of the Factual Basis set forth in the Plea Agreement the parties agreed to and entered into. (Dkt. No 114, Plea Agreement, Factual Basis, pages 2-5) *See United States v. Johnson,* 979 F.2d 396, 399-400 (6th Cir. 1992) (The Sixth Circuit held that an imprecisely drafted plea agreement must be construed against the government because the defendant possesses an underlying constitutional right to contract); and *United States v. Baker,* 25 F.3d 1452, 1458 (9th Cir. 1994) (because the plea agreement did not contain the provision stating that defendant must pay restitution on unconvicted charges, defendant was only required to pay restitution related to his convictions); and *United States v. Fagan,* 996 F.2d 1009, 1013 (9th Cir. 1993) (the government was obligated to comply with the plea agreement despite the government's subsequent discovery that the agreement was based on a mistake of fact). Moreover, the broad scheme identified in Count One does not contemplate commercial contractual arrangements concerning work performed and payments made only after reaching prescribed performance goals. The payments contemplated pursuant to the real estate build out contract were simply not investments solicited by Mr. Beam in connection with any of the companies through alleged false representations that these funds would be invested into the stock of popular companies. Rather, these payments negotiated made under an entirely separate, unrelated,

commercial contract. In fact, no investment was ever made to Mr. Beam in connection with this commercial real estate contract. The payment or payments in question were only made after the lender was satisfied that the work (build out of the space) had been performed under the terms of the contract. The fact that Mr. Beam may owe a subcontractor or was otherwise unable to complete the build out, and therefore did not receive the remaining payment pursuant to contract, does not transform this activity into the fraudulent investment scheme described in the indictment. The amount paid to Mr. Beam under this contract, should therefore be subtracted from the loss total. Additionally, for the same reasons, the property management company should be removed from the list of victims of this scheme.

The elimination of the transaction related to the real estate development company as part of this scheme and concurrent reduction in the amount of loss, reduces the amount of loss enhancement from 14 to 12, and completely eliminates the two-level enhancement for the number of victims in the Guidelines calculation, as there are now less than 10 victims.

Mr. Beam has zero criminal history points, placing him in criminal history Category I. (PSR ¶ 58) It is noteworthy that the Plea Agreement was entered on March 16, 2023, and the presentence report was prepared on August 2, 2023. This is noteworthy because on November 1, 2023, Amendment 821 to the Sentencing Guidelines became effective. Part B, Subpart 1 of Amendment 821 creates a new provision, §4C1.1, that provides a two-level downward adjustment in the offense level for offenders who have zero criminal history points and are not subject to any of the numbered exclusions listed in the new §4C1.1. We are impelled to note that Mr. Beam arguably is not eligible for the two-level reduction under §4C1.1 because the government has submitted victim impact letters which express financial hardship consistent with disqualifying

5

factors provided in Application Note 4(F) of the Commentary to §2B1.1.

Coupling the resulting anticipated offense level of 21 with a criminal history category of I, Mr. Beam's advisory sentencing range is 37 to 46 months' imprisonment.

However, not all sentences within the guideline range are reasonable. *See United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005) ("[T]he sentencing judge may not rest on the guidelines alone, but must, if asked by either party, consider whether the guidelines sentence actually conforms, in the circumstances, to the statutory factors . . . He cannot treat all sentences that would fall within the guidelines sentencing range as reasonable per se.")

Mr. Beam respectfully asks this Court to exercise its discretion, in accordance with the § 3553(a) factors and *Gall*, and sentence him to a below Guidelines sentence.

b.   **Nature and Circumstances of the Offense**

The extent of the offense conduct has been accurately set forth in the Plea Agreement. We anticipate no further aggravating matters will be introduced. It must be noted that the probation officer indicates that Mr. Beam has been in custody for over three years and that Mr. Beam has no disciplinary history during his detainment. (PSR ¶ 5)

Mr. Beam has long since embraced full responsibility for his actions through his admission of guilt, and his written plea agreement. The PSR indicates that Mr. Beam "accepts responsibility for his misconduct and described the instant offense as a 'humbling experience.' The defendant indicated he learned a lot about himself and has worked hard on becoming a better person. … The defendant has been cooperative with the presentence investigation, which includes providing the requested financial information." (PSR ¶¶ 26-27)

c.   **Personal History and Characteristics**

Marcus Beam is currently 53 years old. He was one of two children born to Ernest and Gwen Beam. Marcus's father was an industrial engineer who passed away in 2015 due to kidney disease at the age of 77. (PSR ¶ 66) Marcus' mother, age 77, is a professor of nursing. Marcus indicated that he was blessed to have a normal childhood and was raised in a close-knit family. (PSR ¶ 67) Marcus' brother, David, is 52 years old and resides in Bolingbrook. Marcus has regular contact with brother, who remains supportive of Marcus. (PSR ¶ 66) Marcus married Julisa Beam, age 51, in 1997, and together they have two children: Crystal Beam, age 34; and Sixx Beam, age 26. Julisa indicated that she has a good marriage with Marcus and she and the children remain supportive of Marcus. (PSR ¶ 68)

Since Marcus' arrest and incarceration, his mother, who suffers from advanced dementia, has experienced a marked decline in her mental state. The letter, ( Exhibit A), from his daughter, Sixx, 26 years old, states that her father "was the one helping her out and taking care of her" and that his absence has negatively affected not just his mother, but has impacted the entire family "beyond measure". The consideration of a below-guidelines sentence is applicable here, due to the November 2023 addition to the Guidelines of unique family circumstances. Marcus' mother, and his young daughter, Sixx, who has had to take on the care of her grandmother, on both a physical and emotional level, would benefit from a sentence that would allow Marcus to return to being the primary caretaker of his mother. (§5H1.6(iv). As noted by the Probation Department on page two of its sentencing recommendation, "Mr. Beam reported he began struggling with anxiety, depression, and increased drinking several months prior to the indictment in the instant offense."

    d.    **Deterrence, Just Punishment, and Other Policy Considerations**

This Court is inherently tasked with an incredibly difficult decision as to what a just

punishment is for any given defendant. While the sentencing guidelines work as a benchmark in sentencing, on their face, they fail to account in any way for the characteristics of Marcus Beam. Marcus Beam is a 53-year-old first time non-violent offender who has the love and support of his family. A below guideline sentence is appropriate in this case.

The goal of sentencing is to impose a sentence that is sufficient, but not greater than necessary to comply with the purposes set forth in § 3553(a)(2). Through this "parsimony provision," the Court is to impose a sentence that is the *minimum* necessary to accomplish those goals set forth in paragraph (2). As a first-time felony offender who has accepted personal responsibility in the fullest sense of that phrase, and whose crime, although serious, was non-violent in nature, a below-guidelines sentence would meet the goals of sentencing.

Mr. Beam's conduct in this case has already resulted in certain punishment, including harsh treatment while detained in Indonesia, as well a federal felony conviction, which will affect him for the rest of his life. As the Court is more aware of than most in society, a federal conviction is a stigma that blights a life forever and has serious and severe consequences on not just Mr. Beam, but also his family.[1] Such punishment provides a permanent reminder of Marcus' wrongdoing, and, for Marcus, carries a high degree of guilt and shame.

Thus, given the absence of criminal history, acceptance of responsibility, exemplary institutional record as a detainee, and support of his family, we respectfully request a significantly reduced sentence.

The defense will argue at sentencing that Mr. Beam should receive credit for the time he

---

[1] The stigma of being labeled a federal felon is profound. *United States v. Smith,* 683 F.2d 1236, 1240 (9th Cir. 1982) ("The stigma of a felony conviction is permanent and pervasive."); *see also* Michelle Alexander, The New Jim Crow (Paperback ed. The New Press 2012) at page 94 ("Once a person is labeled a felon, he or she is ushered into a parallel universe in which discrimination, stigma, and exclusion are perfectly legal."); *Id.* at page 163 ("When someone is convicted of a crime today, their 'debt to society' is never paid."); and *United States v. Wuff,* 758 F.2d 1121, 1125 (6th Cir. 1985) ("a felony conviction irreparably damages one's reputation.").Wayne A. Logan "Informal Collateral Consequences"

was in custody in Indonesia and "returned to Chicago in the custody of the United States Marshal's Service." (Plea Agreement, page 8) The PSR indicates that "[o]n July 23, 2020, the defendant was arrested and detained by Indonesian authorities until his return to Chicago, Illinois, on January 27, 2021.") We believe that Mr. Beam is entitled to receive credit for the time spent in the custody of officials in Indonesia. During his detention in Indonesia, Mr. Beam reached out to his counsel, who spoke with

then-Assistant United States Attorney Jackie Stern and conveyed that Mr. Beam was seeking to return to the United States as expeditiously as possible. Mr. Beam was being detained in Indonesia in connection with the offense in the United States and to facilitate his return to the United States. Accordingly, the defense asks that Mr. Beam receive credit for the time spent in custody in Indonesia pursuant to U.S.S.G. § 5G1.3(b), which began on July 23, 2020. *See* 18 U.S.C. § 3585(b)[2] and see generally U.S.S.G. § 5K2.23 (providing that a "downward departure may be appropriate if the defendant has completed a term of imprisonment and § 5G1.3 would have provided an adjustment had that completed term of imprisonment been undischarged at the time of sentencing for the instant offense. Any such departure should be fashioned to achieve a reasonable punishment for the instant offense.").

## CONCLUSION

This Court maintains significant discretion not only to craft a reasonable, appropriate sentence pursuant to the Guidelines, but to consider the totality of circumstances surrounding the individual involved, including, among other factors, the nature and circumstances surrounding Mr.

---

[2] 18 U.S.C. § 3585(b) pertains to credit for prior custody and provides: "A defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences – (1) as a result of the offense for which the sentence was imposed; or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed; that has not been credited against another sentence."

Beam's conviction, his personal history and characteristics, as well as the long-standing collateral consequences the current conviction will have on him. The foregoing considerations outlined in this submission show only a small portion of who Mr. Beam really is: a devoted and dedicated father, husband, son, and brother. He has expressed genuine remorse over his admitted misconduct and accepts personal responsibility for his wrongdoings. The instant conviction has already taken a heavy toll on Marcus, and will continue to, adversely affect him for the rest of his life. In sentencing Mr. Beam to a below-guidelines sentence, this Court would accomplish the goals of sentencing by punishing the individual – not the crime – to a sentence that is sufficient, but not greater than necessary to comport with all of the sentencing considerations contained in 18 U.S.C. § 3553(a).

                                                Respectfully submitted,

                                                /s/ Jeffrey B. Steinback
                                                JEFFREY B. STEINBACK

                                                /s/ Vadim A. Glozman
                                                VADIM A. GLOZMAN
                                                Attorneys for Marcus Beam

Jeffrey B. Steinback
8351 Snaresbrook Road
Roscoe, IL 61073
(847) 624-9600

Vadim A. Glozman
Law Offices of Vadim A. Glozman
53 W. Jackson Boulevard
Suite 1150
Chicago, IL 60604
(312) 726-9015

## **CERTIFICATE OF SERVICE**

10

      I, Jeffrey B. Steinback, the attorney for Defendant Marcus Beam, hereby certify that I filed the above-described document on the CM-ECF system of the United States District Court for the Northern District of Illinois, which constitutes service of the same.

                                          Respectfully submitted,

                                          /s/ Jeffrey B. Steinback
                                          JEFFREY B. STEINBACK
                                          Attorney for Marcus Beam

Jeffrey B. Steinback
8351 Snaresbrook Road
Roscoe, IL 61073
(847) 624-9600